George M. Wallace -- Cal. Bar No. 101472
WALLACE, BROWN & SCHWARTZ
215 North Marengo Avenue
Third Floor
Pasadena, California 91101-1504
(626) 844-6777; Fax (626) 795-0353
Email: gwallace@wbslaw.com

Attorney for Plaintiffs HIT & MISS, ENTERPRISES,
INC., a California corporation; and SAMI AMMARI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIT & MISS, ENTERPRISES, INC., a California corporation; SAMI AMMARI, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LONG BEACH, <br><br> Defendant. | Case No.: **2:18-cv-09996-PSG-JEM** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [Fed.R.Civ.P. 56]** <br><br> DATE:          January 11, 2021 <br> TIME:          1:30 p.m. <br> COURTROOM:  6A |

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ....................................2

*Introduction and Summary of Underlying Facts* ..............................................*2*

*Summary of Contested Statutes and Ordinances* ..............................................*5*

*Legal Argument* ..............................................................................................*12*

*I.   The State of California has Occupied the Field of Regulating Advertising and Signage on Vehicles; the Long Beach Ordinances Concerning "Mobile Billboards" and "Mobile Billboard Advertising" Are Preempted to the Extent They Exceed the Authority Granted by the Provisions of the California Vehicle Code* ..............................................................*12*

*II.  The City's Mobile Billboard Prohibitions Exempt Specified Types of Speech, and Specified Classes of Speaker, and Are Therefore "Content-Based" Restrictions Subject to Strict Scrutiny Under the First Amendment* ..........................................*16*

*III. Long Beach Municipal Code §21.44.600(H), Prohibiting Certain "Vehicle Signs", is Factually Inapplicable to Any of the Plaintiffs' Vehicles* ..................................................*25*

*Conclusion* ......................................................................................................*26*

# TABLE OF AUTHORITIES

**Cases**

*Boyer v. City of Simi Valley,* 978 F.3d 618 (9th Cir. 2020) ...........................24, 25

*Citizens for Free Speech, LLC v. Cty. of Alameda*,

   194 F.Supp.3d 968 (N.D. Cal. 2016) ...............................................................24

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,

   657 F.3d 936 (9th Cir. 2011, *en banc*), cert. denied, *City of Redondo*

   *Beach v. Comite De Jornaleros De Redondo Beach*, ___ U.S. ___,

   132 S.Ct. 1566 (Feb. 21, 2012) ..................................................................18, 26

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,

   827 F.3d 1192 (9th Cir. 2016)....................................................................17, 20

*Metromedia, Inc v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882 (1981) ......26

*Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988) .......................26

*People v. Garth*, 234 Cal.App.3d 1797, 286 Cal.Rptr. 451 (1991).......................14

*Reed v. Town of Gilbert, Ariz.*, ___ U.S. ___, 135 S. Ct. 2218 (2015) ...........21, 23

**Statutes**

Cal. Vehicle Code §21100........................................................................6, 15, 16

Cal. Vehicle Code §22650.................................................................................7

Cal. Vehicle Code §22651............................................................................8, 14

Cal. Vehicle Code §395.5...................................................................5, 14, 15, 16

**Ordinances**

Long Beach Municipal Code §10.18.050....................................................9, 15, 20

Long Beach Municipal Code §21.44.600.......................................................11, 27

Long Beach Municipal Code §21.54.125...................................................11, 15, 21

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### *Introduction and Summary of Underlying Facts*

This is an action primarily seeking equitable and declaratory remedies based on actions and policies of the City of Long Beach infringing the plaintiffs' civil rights, particularly speech rights protected by the First Amendment, and based upon the defendant City's policies and practices of impounding and seizing plaintiffs' parked vehicles pursuant to unconstitutional or otherwise unenforceable local ordinances. Plaintiffs also seek to recover damages under federal and state civil rights laws.[1]

Plaintiff HIT & MISS ENTERPRISES, INC., is a California corporation, with its principal place of business in the County of Los Angeles. Plaintiff SAMI AMMARI is an individual residing and conducting business in the County of Los Angeles. Hit & Miss is owned and operated by members of Ammari's family, and he is associated with that business. Ammari also conducts businesses in his own name, and has used his own property in connection with those businesses within the City of Long Beach. Both plaintiffs have undertaken to exercise their rights of free speech under the First Amendment of the United States Constitution and under the Constitution of the State of California, and to engage in other lawful activity, within the City of Long Beach, and maintain that they have been subjected to unlawful interference with their constitutional and civil rights by the

---

[1]    This action was initially filed in the Superior Court of the State of California. Although it has been removed to the District Court, on request of the defendant City, it continues to present mixed claims involving both state and federal law.

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 2

actions, policies, and practices of the City of Long Beach. First Amended Complaint, ¶¶3-4.

The present Motion to Summary Judgment is being presented on the basis of a Stipulation of Facts agreed to by the plaintiffs and the defendant City. The City will be filing a motion for summary judgment of its own, to be heard concurrently with the plaintiff's motion. The terms of the Stipulation have also been incorporated in the factual portions of plaintiffs' proposed Statement of Uncontroverted Facts and Conclusions of Law, accompanied by the legal conclusions that plaintiffs contend can and should be drawn from those facts.

The protected First Amendment activity in which the plaintiffs have engaged consists principally in owning and maintaining motor vehicles and non-motorized vehicles. Plaintiff Hit & Miss has utilized, and continues to utilize, utility trailers for the primary purpose of storing and transporting property and materials used in its business, including cleaning supplies and related equipment. The trailers also bear messages, signage, and advertising painted or otherwise affixed their exteriors. When the trailers are not in active use in moving and storing the plaintiff's equipment and business supplies, Hit & Miss parks the trailers, sometimes attached to a motor vehicle and sometimes not, on public streets, including locations in the City of Long Beach. Stipulation, ¶9. Plaintiff Ammari has also utilized, and continues to utilize, motor vehicles (principally vans) for the purpose of storing and transporting persons, property and materials used in his businesses. Those vehicles also bear messages, signage, and advertising painted, "wrapped," or otherwise permanently affixed to their exteriors. When those motor vehicles are not in direct, active use in other aspects

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 3

of the businesses, Ammari parks them, on public streets, including at locations in the City of Long Beach. Stipulation ¶10.

On or about May 8, 2018, the Office of the City Attorney of the City of Long Beach transmitted a letter to plaintiff Hit & Miss, over the signature of Deputy City Attorney Sheila E. Green. In that letter, the City asserted that its "investigation" had determined that plaintiff Hit & Miss's utility trailers "are being used primarily for advertisement purposes and are therefore prohibited in the City of Long Beach." The letter further stated:

> [Y]our use of the above-referenced vehicles as a 'mobile billboard advertising vehicles' is prohibited. We hereby demand that you discontinue these uses of the vehicle by removing the vehicle from all public right-of-ways immediately and/or by immediately detaching the signs attached to the sides of the vehicle. **If the unlawful use of the vehicles described above is not discontinued immediately, the City will have no choice but to remove your vehicles from the public right-of-way by having them impounded. No further notice will be provided for future violations; these vehicles will continue to be removed from the public right of way by impounding.**

(Emphasis in original.) Stipulation, ¶11, and Exhibit "A" thereto.

Beginning ten days later, and continuing thereafter, the defendant City, on an ongoing and recurring basis, impounded and removed, or threatened to impound and remove, the plaintiffs' utility trailers and motor vehicles from locations at which they were legally parked within the City of Long Beach. On each occasion, the seizure was made on the purported authority of Long Beach

Municipal Code §10.18.050, §21.54.125, §21.44.600, or some combination of those three ordinances. Stipulation,¶12.

### *Summary of Contested Statutes and Ordinances*

The core issues in this case require interpretation of the subject ordinances adopted by the City of Long Beach, in conjunction with relevant provisions of the California Vehicle Code, and the assessment of those ordinances in light of the U.S. Constitution and, to a lesser degree, the Constitution of the State of California. The particulars of the relevant statutes and ordinances are set out at length in Paragraphs 1 through 8, inclusive, of the Stipulation of Facts, as follows:

Beginning in 2010, the State of California has enacted a series of statutes and amendments thereto regulating a class of vehicle designated as "mobile billboard advertising displays" and granting to municipalities such as the City of Long Beach authority to adopt and enforce local ordinances permitting the seizure and impound of a vehicle that is determined to be a "mobile billboard advertising display." The term "mobile billboard advertising display" is defined in Cal. Vehicle Code §395.5, as follows:

> A 'mobile billboard advertising display' means an advertising display that is attached to a mobile, nonmotorized vehicle, device, or bicycle, that carries, pulls, or transports a sign or billboard, and is for the primary purpose of advertising.

Stipulation, ¶1.

The authority of a municipality such as the City of Long Beach to adopt ordinances concerning non-motorized "mobile billboard advertising displays" is

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 5

codified in Cal. Vehicle Code §21100, subdivision (m). The authority of a municipality such as the City of Long Beach to regulate signage on motor vehicles is codified in Vehicle Code §21100, subdivision (p). California Vehicle Code §21100 provides in relevant part as follows:

> Local authorities may adopt rules and regulations by ordinance or resolution regarding … the following matters:
>
> * * *
>
> (m)    Regulating mobile billboard advertising displays, as defined in Section 395.5, including the establishment of penalties, which may include, but are not limited to, removal of the mobile billboard advertising display, civil penalties, and misdemeanor criminal penalties, for a violation of the ordinance or resolution. The ordinance or resolution may establish a minimum distance that a mobile billboard advertising display shall be moved after a specified time period.
>
> * * *
>
> (p) (1) Regulating advertising signs on motor vehicles parked or left standing upon a public street. The ordinance or resolution may establish a minimum distance that the advertising sign shall be moved after a specified time period.
>
> (2) Paragraph (1) does not apply to any of the following:
>
> (A)  Advertising signs that are permanently affixed to the body of, an integral part of, or a fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle.

* * *

> (3)  As used in paragraph (2), "permanently affixed" means any of the following:
>
> (A)  Painted directly on the body of a motor vehicle.
>
> (B)  Applied as a decal on the body of a motor vehicle.
>
> (C)  Placed in a location on the body of a motor vehicle that was specifically designed by a vehicle manufacturer as defined in Section 672 and licensed pursuant to Section 11701, in compliance with both state and federal law or guidelines, for the express purpose of containing an advertising sign.

Stipulation, ¶2.

A municipality, acting through a peace officer or other traffic enforcement authority, can only remove or impound a vehicle on a public roadway as expressly authorized by the California Vehicle Code. That limitation is codified in Cal. Vehicle Code §22650, subdivision (a), which provides in relevant part:

> (a) It is unlawful for a peace officer or an unauthorized person to remove an unattended vehicle from a highway to a garage or to any other place, except as provided in this code.

Stipulation, ¶3.

The conditions under which a non-motorized "mobile billboard advertising display", or a motor vehicle bearing unpermitted signage, may be removed by a municipal authority such as the City of Long Beach are codified in Cal. Vehicle Code §22651, subdivisions (v) and (w), the relevant portions of which provide as follows:

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 7

A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or a regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city, county, or jurisdiction of a state agency in which a vehicle is located, may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances:

* * *

(v)(1) When a vehicle is a mobile billboard advertising display, as defined in Section 395.5, and is parked or left standing in violation of a local resolution or ordinance adopted pursuant to subdivision (m) of Section 21100, if the registered owner of the vehicle was previously issued a warning citation for the same offense, pursuant to paragraph (2).

(2)  Notwithstanding subdivision (a) of Section 22507, a city or county, in lieu of posting signs noticing a local ordinance prohibiting mobile billboard advertising displays adopted pursuant to subdivision (m) of Section 21100, may provide notice by issuing a warning citation advising the registered owner of the vehicle that he or she may be subject to penalties upon a subsequent violation of the ordinance, that may include the removal of the vehicle as provided in paragraph (1). A city or county is not required to provide further notice for a subsequent violation prior to the enforcement of penalties for a violation of the ordinance.

(w)(1) When a vehicle is parked or left standing in violation of a local ordinance or resolution adopted pursuant to subdivision (p) of Section 21100, if the registered owner of the vehicle was previously issued a warning citation for the same offense, pursuant to paragraph (2).

(2) Notwithstanding subdivision (a) of Section 22507, a city or county, in lieu of posting signs noticing a local ordinance regulating advertising signs adopted pursuant to subdivision (p) of Section 21100, may provide notice by issuing a warning citation advising the registered owner of the vehicle that he or she may be subject to penalties upon a subsequent violation of the ordinance that may include the removal of the vehicle as provided in paragraph (1). A city or county is not required to provide further notice for a subsequent violation prior to the enforcement of penalties for a violation of the ordinance.

Stipulation, ¶4

In 2009, prior to the California's adoption of any Vehicle Code sections regulating vehicle-based signs or advertising, the City of Long Beach adopted an ordinance, Long Beach Municipal Code §10.18.050, to regulate "mobile billboard advertising." That ordinance provides as follows:

A.    Purpose. The purpose of this Section is to eliminate billboard advertising in the City in order to promote the safe movement of vehicular traffic, to reduce air pollution and to improve the aesthetic appearance of the City.

B.    General requirements. It is unlawful for any person to conduct, or cause to be conducted, any mobile billboard advertising upon any street, or other public place within the City in which the public has the right of travel.

C.    Parking. It is unlawful for any person to conduct or cause to be conducted by stopping, standing or parking, any mobile billboard advertising upon any street, or other public place within the City in which the public has the right of travel.

D.    Definition. Mobile billboard advertising includes any vehicle or wheeled conveyance which carries, conveys, pulls or transports any sign or billboard for the primary purpose of advertising.

E.    Exemptions. This Section shall not apply to:

1.    Any vehicle which displays any advertisement or business identification of its owner, so long as such vehicle is engaged in the usual business or regular work of the owner, and not used merely, mainly or primarily to display advertisements;

2.    Buses; or

3.    Taxicabs.

There has been no ordinance adopted by the City of Long Beach specifying that the penalties for a violation of Section §10.18.050 may include removal and impound of the offending vehicle. Stipulation, ¶6.

In 2014, the City of Long Beach adopted an ordinance, Long Beach Municipal Code §21.54.125, subdivision (A), also regulating "mobile billboards." The ordinance provides in relevant part as follows:

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 10

As set forth in Section 21.54.110, any type or location of billboard development not specifically permitted by this Chapter shall be prohibited. Additionally, the following types of prohibited billboards are specified for clarity. However, this shall not limit the types of prohibited billboards to those described below:

A. Mobile billboards. Any billboard installed upon, mounted, attached, or applied to any vehicle, non-motorized vehicle, bicycle, scooter, or trailer whose primary purpose is conveyance, transportation, or support of the billboard message surface shall be prohibited from any display or placement on public or private property or the public right-of-way in a manner making it visible from any other public or private property or the public right-of-way;…

There has been no ordinance adopted by the City of Long Beach specifying that the penalties for a violation of Section §21.54.125 may include removal and impound of the offending vehicle. Stipulation, ¶7.

In 2013, the City of Long Beach adopted an ordinance, Long Beach Municipal Code §21.44.600, subdivision (H), to regulate "Vehicle Signs." Chapter 21.44 of the Long Beach Municipal Code, in which that ordinance is incorporated, specifies that it regulates "On-Premises Signs". Section 21.44.600 provides in relevant part as follows:

The following signs shall be prohibited:

* * *

H. Vehicle Signs. Signs identifying a business shall not be affixed to or placed in or on vehicles parked in the public

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 11

right-of-way or on private property in a manner such that the vehicle functions as a sign for the business. This regulation shall not apply to buses and taxicabs legally operating within the City limits, or to other permitted uses regulated under other titles of the Municipal Code. However, mobile billboards are prohibited in Chapter 21.54 (Billboards).

There has been no ordinance adopted by the City of Long Beach specifying that the penalties for a violation of Section §21.44.600 may include removal and impound of the offending vehicle. Stipulation, ¶8.

### *Legal Argument*

**I.     *The State of California has Occupied the Field of Regulating Advertising and Signage on Vehicles; the Long Beach Ordinances Concerning "Mobile Billboards" and "Mobile Billboard Advertising" Are Preempted to the Extent They Exceed the Authority Granted by the Provisions of the California Vehicle Code***

The two principal ordinances in the City of Long Beach purporting to prohibit "mobile billboard advertising" or "mobile billboards," Long Beach Municipal Code §§10.18.050 and 21.54.125, are unenforceable initially as a matter of California state law, for the reason that those ordinances go beyond the authority that the state Legislature has delegated to municipalities in the field of regulating signs and advertising on vehicles.

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 12

In California, the general authority to regulate vehicles, highways, and parking is preempted by the State. All local authority to restrict parking on public roadways must come by way of a delegation from the Legislature. A municipality is powerless to prohibit a vehicular activity at the local level unless the Legislature has given it permission to do so.

> [T]he field of traffic control, including vehicular parking regulations, is preempted by [California] state law. 'The state's plenary power and its preemption of the entire field of traffic control are stated in Vehicle Code section 21: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein." Thus, unless "expressly provided" by the Legislature, a city has no authority over vehicular traffic control.' (*Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 550, 183 Cal.Rptr. 73, 645 P.2d 124; citations and italics omitted.)

*People v. Garth*, 234 Cal.App.3d 1797, 1799, 286 Cal.Rptr. 451, 452 (1991).

Prior to 2010, there were no Vehicle Code provisions authorizing regulation of advertising on vehicles. In particular, Vehicle Code §26651, which catalogs the specific situations in which a local authority can seize or impound a vehicle, did not include any provisions allowing for removal of a vehicle based on its carrying a sign or other advertising. In 2010, the Legislature adopted a definition of "mobile billboard advertising display" in Vehicle Code §395.5, authorized local regulation of "mobile billboard advertising displays" in Vehicle

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 13

Code §21100, and added a subdivision to Vehicle Code §22651 designating a "mobile billboard advertising display" as potentially subject to physical removal by a municipality. In 2011, the Legislature amended sections 21100 and 22651 to allow local regulation of some signs carried on motor vehicles, and potential impound of vehicles violating those regulations.

The Legislature drew a plain distinction between motorized and non-motorized vehicles when it defined municipalities' authority with regard to vehicle-based advertising or signage. A non-motorized "mobile billboard advertising display", can be prohibited from parking, and can be impounded, simply because "[the] vehicle **is** a mobile billboard advertising display, as defined in Section 395.5." Cal. Vehicle Code §22651(v)(1), emphasis added. The authority of a city to regulate signs carried on or attached to motor vehicles, in contrast, is concerned primarily with physical safety, and the risk that signs may become detached, fall off, or physically interfere with vehicle operation. The controlling statute is explicit in not permitting local regulation of "[a]dvertising signs that are permanently affixed to the body of, an integral part of, or a fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle." Cal. Vehicle Code §21100(p)(2)(A). "Permanently affixed" signs include those that are painted on the body of the motor vehicle, or applied as a decal or wrap, as are the signs that are carried on the plaintiffs' vans involved in this case. See Cal. Vehicle Code §21100(p)(3).

The City of Long Beach first adopted an ordinance concerning mobile billboards in 2009, the year before the Legislature first acted to grant municipalities express authority to do so. The City's definition of "mobile

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 14

billboard advertising", unchanged since 2009, is broader than the definition established in Cal. Vehicle Code §395.5. The Vehicle Code provision defines a "mobile billboard advertising display" as a display "that is attached to a **mobile, nonmotorized vehicle, device, or bicycle** that … is for the primary purpose of advertising." The Long Beach ordinances, in contrast, refer to "**any vehicle or wheeled conveyance** which carries, conveys, pulls or transports any sign or billboard for the primary purpose of advertising" [§10.18.050] and to a "billboard installed upon, mounted, attached, or applied to **any vehicle, non-motorized vehicle, bicycle, scooter, or trailer**" [§21.54.125]. The ordinances make no distinction between motorized and non-motorized vehicles, despite those two varieties of vehicle being regulated differently under the Vehicle Code.

All of the motor vehicles involved in this case, specifically the vans owned by plaintiff Sami Ammari, comply with the requirements of the Vehicle Code with regard to signage, so that the City does not have the power to prohibit the parking of those vehicles, nor to impound them. The signage on all of those motor vehicles, regardless of its subject matter, is "permanently affixed" to the vehicle for "decoration, identification, or display", and is therefore exempt from local regulation pursuant to Vehicle Code §21100(p)(2)(A). The City lacks authority to interpret or enforce its "mobile billboard" ordinances as against those vehicles.

The signage on the plaintiff's non-motorized utility trailers is also permanently affixed. That fact in itself should be enough to remove those trailers from the reach of the City's ordinances, because the trailers do not meet the definition of "mobile billboard advertising display" in Vehicle Code §395.5.

Section 395.5 contemplates that a "mobile billboard advertising display" has two components: the advertising display itself, and a non-motorized vehicle

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 15

on which that display appears. The combination becomes a "mobile billboard advertising display" under the statute only if the *vehicle* "that carries, pulls, or transports" the display "is for the primary purpose of advertising." That is, the vehicle must be determined to exist first and foremost to carry a display, i.e., to have been designed and made principally to engage in the activity of "advertising", and not for any other purpose. Attaching a display as an ancillary matter to a vehicle that is of a type that serves and is designed to serve some other primary purpose—as the utility trailers in this case do—does not transform that vehicle into a prohibitable "mobile billboard advertising display".

The primary purpose of a utility trailer, as a class of vehicle, is to store property and to transport property from place to place. That is the function for which it is primarily designed. That is the primary function for which plaintiffs used their utility trailers. Storage and transport does not cease to be the primary purpose of a utility trailer because a sign is attached to it. Storage and transport does not cease to be the primary purpose of a utility trailer when it is parked. Sign or no sign, empty or full, moving or parked, a utility trailer is a utility trailer, not a vehicle of a type "that … is for the primary purpose of advertising" as required to satisfy the definition in Vehicle Code §395.5.

### II.     The City's Mobile Billboard Prohibitions Exempt Specified Types of Speech, and Specified Classes of Speaker, and Are Therefore "Content-Based" Restrictions Subject to Strict Scrutiny Under the First Amendment

The City of Long Beach is one of a number of cities in California that have adopted ordinances regulating and prohibiting the parking of so-called "mobile

billboard advertising displays." Comparable ordinances of four other municipalities, including the City of Los Angeles, were the subject of a prior suit that reached the Ninth Circuit in the case of *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192 (9th Cir. 2016) ["*Lone Star*"]. The lead plaintiff in *Lone Star*, a company selling and monitoring security alarm systems, contended that a prohibition on "advertising" is a content-based restriction, and could be upheld and enforced only if it satisfied a strict scrutiny standard.  "In public places such as streets and sidewalks, 'the State [may] enforce a content-based exclusion' on speech if the 'regulation is **necessary to serve a compelling state interest** and that it is **narrowly drawn to achieve that end**.' *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011, *en banc*), cert. denied, *City of Redondo Beach v. Comite De Jornaleros De Redondo Beach*, ___ U.S. ___, 132 S.Ct. 1566 (Feb. 21, 2012), emphasis added.

When the *Lone Star* case came before the Ninth Circuit on appeal from a grant of summary judgment in favor of the defendant cities, the court affirmed that judgment, and held that the mobile billboard ordinances before it were not content-based exclusions, but were instead content-neutral "time, place, and manner" regulations subject to less stringent scrutiny. In reaching that conclusion, the court rejected Lone Star's contention that some speech is "advertising" but other speech is not. That distinction, Lone Star argued, would be consistent with the common meaning and usage of the terms "advertising" and "advertisement", which ordinarily refer to certain types of public communications that might be displayed on a parked sign or "billboard"—e.g., commercial advertising, political

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 17

advertising, announcements of upcoming events or activities—but would typically not be used to describe certain other messages that might be borne by an identical parked vehicle—e.g., directional arrows (in relation to a detour, the location of a parking lot entrance, or similar guidance of traffic), notices of highway conditions ahead, or speed limit notifications. The *Lone Star* court instead concluded that "advertising" as used in the statute and related ordinances is a *verb*, not a category of message, and that "advertising" consists in the activity of displaying *any* content in such a way that it may be seen by and communicated to the public:

> We disagree that the word 'advertising' renders the challenged regulations content based on their face. In the context of mobile billboard regulations, the California Court of Appeal has already recognized that the word 'advertising' **refers to the activity of displaying a message to the public, not to any particular content that may be displayed**.
>
> The term "advertise" is not limited to calling the public's attention to a product or a business. The definition of "advertise" is more general: "to make something known to[;] ... to make publicly and generally known[;] ... to announce publicly *esp[ecially] by a printed notice or a broadcast* ...." (Merrian [*sic*]–Webster's Collegiate Dict. (10th ed., 1995) p. 18; italics added.) Thus, although the subject of the matter brought to notice may be commercial, it is not necessarily so. Messages endorsing a political candidate, a social cause or a religious belief would also fall within the term "advertise."

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 18

[Citing and quoting *Showing Animals Respect & Kindness v. City of West Hollywood*, 166 Cal.App.4th 815, 819-20, 83 Cal.Rptr.3d 134, 137-38 (2008).]

*** We will 'follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.' *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983))…. Accordingly, we hold that the mobile billboard bans regulate the manner—not the content—of affected speech. The ordinances address only the types of sign-bearing vehicles subject to regulation, and discriminate against prohibited billboards on the basis of their size and mobility alone, and are thus content neutral. Even a regulated vehicle bearing a blank sign could conceivably violate the ordinances.

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*, *supra*, 827 F.3d at 1198-1200, italics in original, other emphasis added.

Although the plaintiffs disagree with this reasoning, it is undeniably the current law in this circuit. If the City of Long Beach had done as the cities in *Lone Star* did, and had adopted a blanket prohibition on the parking of non-motorized "mobile billboard advertising displays", with no exceptions, using the language of the Vehicle Code, then *Lone Star* would support a finding that the ordinance is enforceable. That is not what the City of Long Beach has done in either Long Beach Municipal Code §10.18.050 or §21.54.125, its two purported prohibitions of "mobile billboard advertising". The former section specifically

excludes three classes of advertising from its reach: "1. Any vehicle which displays any advertisement or business identification of its owner, so long as such vehicle is engaged in the usual business or regular work of the owner, and not used merely, mainly or primarily to display advertisements; [¶] 2.  Buses; or [¶] 3. Taxicabs." Those exemptions were left unchanged when the City adopted the largely indistinguishable prohibition on "mobile billboards" in §21.54.125, and must be presumed to apply equally to that ordinance.[2]

The ordinances at issue in *Lone Star* were held to be content-neutral because *every* possible message was declared to be impermissible; the case adopts an "all or nothing" rationale. With the addition of the exemptions in Subpart E of §10.18.050, the City of Long Beach has chosen to favor a handful of messages specifically because of their content or because of who is conveying them, in contradiction to that rationale. Because of those exemptions, the ordinance must be deemed a content-based restriction on speech, which must satisfy a strict scrutiny standard in order to be upheld.

This analysis finds support in the Supreme Court's decision in *Reed v. Town of Gilbert, Ariz.*, ___ U.S. ___, 135 S. Ct. 2218 (2015) ["*Reed*"], which compels the conclusion that permitting the use of mobile billboard advertising displays by some speakers, but not by others, based on the

---

[2]     The discussion of "mobile billboards" in §21.54.125 is in the context of a citywide prohibition on all kinds of unpermitted "billboards", and is stated to be an example of a specific type of prohibited billboard "specified for clarity". It appears the later section is not intended to enact some new or different rule as to "mobile billboards", but instead is simply describing the existing and continuing rule adopted in 2009 in §10.18.050. Plaintiffs have had vehicles impounded, or have been subjected to prosecution, under both ordinances, so the City's position

---

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 20

identity of the speaker and the nature of their messages, is impermissible under the First Amendment.

In *Reed*, laws adopted by the Town of Gilbert, Arizona, banned all outdoor signs without a permit, but identified 23 categories of sign as exempt from the ban. Each of the 23 exemptions carried its own preconditions concerning size, or placement, or the length of time for which signs in that category might be displayed. Examples of exempt categories included "ideological signs," "political signs," and "temporary directional signs". The plaintiff in *Reed*, a local church, challenged the law after being cited repeatedly for violating the restrictions on "temporary directional signs." The district court granted summary judgment in favor of the Town, and a panel of this circuit affirmed. After granting certiorari, the Supreme Court reversed and remanded, the majority determining that the exemptions were content based, and that they could not withstand strict scrutiny.

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. [Citations].… Some facial distinctions based on a message are obvious, **defining regulated speech by particular subject matter**, and others are more subtle, **defining regulated speech by its function or purpose**. **Both** are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed*, *supra*, 135 S. Ct. at 2227, emphasis added. The Supreme Court majority firmly rejected any conflation of "content neutrality" and "viewpoint neutrality", and emphasized that there need not be any official hostility to a particular viewpoint before a law must be subjected to strict scrutiny. "[A]n innocuous

justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 2228.

While the City of Long Beach has not adopted a schema as elaborate as that of the Town of Gilbert, it has nevertheless identified certain speakers who are exempted from the otherwise universal prohibition of "mobile billboard advertising" as a means of communication. *Reed* recognizes that an impermissible content-based distinction may lie within the seemingly neutral harbor of a speaker-based classification:

> [T]he fact that a distinction is speaker based does not, as the [Ninth Circuit] seemed to believe, automatically render the distinction content neutral. Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,' *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), we have insisted that "**laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference**," *Turner [Broadcasting System, Inc. v. F.C.C.]*, 512 U.S. [622] at 658, 114 S.Ct. 2445[, 129 L.Ed.2d 497 (1994)] ….

*Reed*, *supra*, 135 S.Ct. at 2230-31 (emphasis added). See also *Citizens for Free Speech, LLC v. Cty. of Alameda*, 194 F.Supp.3d 968, 983-984 (N.D. Cal. 2016).

The Ninth Circuit has recently applied the rationale of *Reed* to a "mobile billboard" law that created exceptions permitting certain speakers to use mobile billboards to transmit their messages while others are not allowed the same right. In *Boyer v. City of Simi Valley,* 978 F.3d 618 (9th Cir. 2020) ["*Boyer*"], the defendant city adopted a prohibition on mobile billboard advertising displays, but

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 22

exempted "authorized emergency vehicles" and vehicles authorized by the City Engineer "for construction, repair or maintenance of public or private property." As in this case, the complaint was removed from state court to the District Court. The District Court granted a motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding that the exemptions did not render the mobile billboard restrictions content-based, rather than content neutral. The Ninth Circuit panel, applying *Reed*, concluded that no justification had been offered under which the designation of the preferred speakers could be disconnected from a preference for the messages those speakers would convey on their mobile billboard displays.

> We struggle to identify a justification for allowing speech only from authorized emergency and construction, repair, or maintenance vehicles that does not rely on content, and the City offers none. The City cites SVMC § 4-9.501 as setting forth the purpose of the relevant ordinances. That provision states, in pertinent part, that the parking regulations at issue are "reasonable and necessary to protect the health, safety, and welfare of the citizens of the City." From this we infer that the City believed it was "reasonable and necessary" to exempt authorized vehicles from displaying billboards on public property to 'protect the health, safety, and welfare' of the community. SVMC § 4-9.501.

> But that justification makes sense only if we assume that authorized vehicles are more likely to display messages that promote public health, safety, and welfare than nonauthorized vehicles. In other words, how else could allowing authorized vehicles to display messages via mobile billboards protect the health, safety, and

Memorandum in Support of Motion for Summary Judgment [Plaintiffs] - 23

welfare of City residents if not because those authorized vehicles are likely to display public-safety related messages? Thus, to execute its purpose, the City enacted an ordinance that prefers speakers likely to spread messages consistent with its purpose. This is a prudent preference, a reasonable rationale, *and a content-based choice* that triggers strict scrutiny. *See Reed*, 576 U.S. at 170, 135 S.Ct. 2218. Even "perfectly rational" sign ordinances must yield to the "clear and firm rule governing content neutrality [that] is an essential means of protecting the freedom of speech." *Id.* at 171, 135 S.Ct. 2218. That firm rule mandates strict scrutiny review whenever an ordinance allows some messages, but not others, based on content— no matter how sensible the distinction may be. *Id.*

*Boyer v. City of Simi Valley,* 978 F.3d 618, 622–23 (9th Cir. 2020), italics in original. The court reversed the dismissal and remanded the case for application of a strict scrutiny standard.

Here as well, the exemptions created to the blanket prohibition on mobile billboard use in the City of Long Beach appear to favor preferred sorts of speech and preferred messages, and therefore to be content based. To justify that distinction the City must satisfy a strict scrutiny test: it must show that its ordinances are " '**necessary** to serve a **compelling state interest** and that it is **narrowly drawn to achieve that end**.' [Citation]." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, *supra*, 657 F.3d at p. 940, emphasis added. The City's mobile billboard regulations are justified in Long Beach Municipal Code §10.18.050(A) by a stated rationale of enhancing safety and aesthetics. The rule is settled, however, that "**interests in traffic safety and**

**aesthetics, while 'substantial,' [fall] shy of 'compelling.'"** See, e.g., *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 249 (9th Cir. 1988), emphasis added, citing *Metromedia, Inc v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882 (1981). Those interests cannot and do not warrant a content based restriction, as a matter of law. Absent the requisite showing of necessity to meet a compelling need, these speech restrictions cannot withstand strict scrutiny, and must be declared void and unenforceable.

>    **III.    Long Beach Municipal Code §21.44.600(H), Prohibiting Certain "Vehicle Signs", is Factually Inapplicable to Any of the Plaintiffs' Vehicles**

Some of the impounds and prosecutions of the plaintiffs have been stated by the City to be exercises of authority under Long Beach Municipal Code §21.44.600, subdivision (H). That ordinance is entirely irrelevant to any acts of the plaintiffs: the category of "Vehicle Signs" addressed in that ordinance has nothing whatever to do with any of the plaintiffs' vehicles. Because it has been asserted by the City, however, it is necessary to obtain a declaration of its meaning and purpose.

Section 21.44.600 is included in the chapter of the City's billboard and sign regulations that regulates on-premises signage, i.e., signs that are located at the location of a business and that give the public notice of the presence and nature of that business at that location. Subdivision (H) prohibits "a business" from affixing or placing signs in or on a vehicle and then placing the vehicle "in a manner such that the vehicle functions as a sign for the business." The only reasonable interpretation of the ordinance is to apply to parking a vehicle, with a sign, at a

business's location, in lieu of or in addition to placing a sign on the building, in a window, on an adjacent on-premises billboard, or similar action to identify the business's location.

Plaintiff's do not own or operate a business at any fixed location in the City of Long Beach. Even when their vehicles carried signs referring to their own businesses, their vehicles were never placed or used to "function" as an on-premises sign for that or any other business. This ordinance can and should be declared entirely inapplicable to the plaintiffs.

### *Conclusion*

The ordinances of the City of Long Beach on the basis of which the City has acted to impound plaintiffs' vehicles, and to prosecute plaintiff Sami Ammari, are all constitutionally unsound, adopted in excess of the City's authority under state law, factually inapplicable to any of plaintiffs' vehicles, or, in some cases, all three. The Court should grant summary judgment in the plaintiffs' favor as a mater of law, and declare that plaintiffs are entitled re equitable, declaratory, and monetary relief on all grounds stated in the Complaint.

DATED: November 23, 2020                  Respectfully submitted,

                                          WALLACE. BROWN & SCHWARTZ

                                          */s/ George M. Wallace*
                                          _____
                                          by GEORGE M. WALLACE
                                          Attorneys for Plaintiffs